Record No. 14-1485

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

MOHAMMAD SAZZAD JAHIR and
ANTHONY MINTU GOMEZ,

Appellants,

v.

RYMAN HOSPITALITY PROPERTIES, INC and
MARRIOTT INTERNATIONAL, INC.,

Appellees.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

## BRIEF OF APPELLEES
## MARRIOTT INTERNATIONAL, INC. AND
## RYMAN HOSPITALITY PROPERTIES INC.

| Joshua B. Waxman | David B. Jordan |
|---|---|
| Steven E. Kaplan | LITTLER MENDELSON, P.C. |
| LITTLER MENDELSON, P.C. | 1301 McKinney Street |
| 1150 17th Street N.W. | Suite 1900 |
| Suite 900 | Houston, TX 77010 |
| Washington, DC 20036 | 713.951.9400 |
| 202.842.3400 | |
| | |
| Attorneys for Appellee | |
| Marriott International, Inc. | |

| | |
|---|---|
| Daniel V. Johns<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>215.864.8652.<br><br>Attorneys for Appellee<br>Ryman Hospitality Properties, Inc. | Michelle M. McGeogh<br>BALLARD SPAHR LLP<br>300 East Lombard Street<br>18th Floor<br>Baltimore, MD 21202<br>410.528.5662 |

# TABLE OF CONTENTS

Page(s)

I.    STATEMENT OF THE ISSUES ...................................................1

II.   STATEMENT OF THE CASE ....................................................2

III.  SUMMARY OF ARGUMENT .....................................................3

IV.   ALLEGATIONS FROM THE AMENDED COMPLAINT ........................6

V.    DISTRICT COURT'S DECISION ................................................8

VI.   ARGUMENT .........................................................................9

    A.    Standard of Review .......................................................9

    B.    Statutory and Regulatory Background ..............................10

    C.    Defendants Did Not Violate Section 3(m) Because They Did Not Take The "Tip Credit" And They Paid Plaintiffs The Full Minimum Wage (Count I) ................................................13

        1.    Section 3(m) is clear and unambiguous and does not impose any requirements on an employer that does not take the "tip credit" to offset the minimum wage requirements ......................................................13

        2.    The Court need not even evaluate Defendants' tip pooling arrangement because the threshold question is whether Section 3(m) even applies to employers who do not offset the minimum wage requirement by taking a "tip credit." ..................................................19

        3.    Policy arguments favor protecting the interests of other traditionally low wage restaurant workers ...............................21

    D.    Section 301 of the LMRA Bars Plaintiffs' Breach of Contract Claim (Count II) .........................................................24

        1.    Plaintiffs failed to exhaust the grievance procedures .............25

        2.    Plaintiffs failed to plead the union breached its duty of fair representation ....................................................27

    E.    The District Court Correctly Dismissed Plaintiffs' MWPCL Claim (Count III) ......................................................30

VII. CONCLUSION ....................................................................35

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985)........................................................................25

*Amburgey v. Consolidation Coal Co.*,
   923 F.2d 27 (4th Cir. 1991) .....................................................25, 26

*Anderson v. Sara Lee Corp.*,
   508 F.3d 181 (4th Cir. 2007) ..................................................passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................9

*Bozetarnik v. Mahland*,
   195 F.3d 77 (2d Cir. 1999) .............................................................35

*Butler v. PP&G, Inc.*,
   No. WMN-13-430, 2013 U.S. Dist. LEXIS 159417 (D. Md. Nov. 7,
   2014) ...............................................................................................31

*Chamber of Commerce of U.S. v. Nat'l Labor Relations Bd.*,
   721 F.3d 152 (4th Cir. 2013) .........................................................14

*Chavez v. Besie's Corp.*,
   No. 14-cv-1338, 2014 U.S. Dist. LEXIS 146516 (D. Md. Oct. 10, 2014)........33

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984)..................................................................passim

*Cumbie v. Woody Woo*,
   596 F.3d 577 (9th Cir. 2010) .........................................15, 16, 17, 23

*Davis v. Bell Atl.-W.Va., Inc.*,
   110 F.3d 245 (4th Cir. 1997) .........................................................34

*Edwards v. City of Godsboro*,
   178 F.3d 231 (4th Cir. 1999) .........................................................24

*Epps v. JP Morgan Chase Bank, N.A.*,
  675 F.3d 315 (4th Cir. 2012) ........................................................9, 32

*Fizer v. Safeway Stores, Inc.*,
  586 F.2d 182 (10th Cir. 1978) ...........................................................27

*Foy v. Giant Food Inc.*,
  298 F.3d 284 (4th Cir. 2002) ..............................................................34

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
  335 F.3d 308 (4th Cir. 2003) ..............................................................30

*Int'l Bhd. of Elec. Workers v. Hechler*,
  481 U.S. 851 (1987)............................................................................34

*Kilgore v. Outback Steakhouse of Florida, Inc.*,
  160 F.3d 294 (6th Cir. 1998) ..............................................................21

*Kirby v. Allegheny Beverage Corp.*,
  811 F.2d 253 (4th Cir. 1987) ..............................................................34

*Lingle v. Norge Div. of Magic Chef*,
  486 U.S. 399 (1988)............................................................................34

*Meyer v. Berkshire Life Ins. Co.*,
  372 F.3d 261 (4th Cir. 2004) .........................................................9, 30

*Mould v. NJG Food Serv., Inc.*,
  No. JCB-13-1305, 2014 U.S. Dist. LEXIS 84441 (D. Md. June 17, 2004) passim

*Mould v. NJG Food Serv. Inc.*,
  No. JKB-13-1305, 2014 WL 1430696 (D. Md. Apr. 11, 2014) ........................33

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
  723 F.3d 192 (2d Cir. 2013) ...............................................................10

*Natl. Post Office Mail Handlers Local No. 305, LIUNA, v. U.S. Postal Serv.*,
  594 F.2d 988 (4th Cir. 1979) ..............................................................25

*Oregon Rest. & Lodging v. Solis*,
  No. MWM-12-01261, 2013 U.S. Dist. LEXIS 80396 (D. Or. June 7,
  2013) ....................................................................................17, 20, 22

*Platek v. Duquesne Club*,
961 F. Supp. 831 (W.D.Pa. 1994), *aff'd without opinion*, 107 F.3d 863
(3d Cir. 1997) ................................................................................ 14, 20

*Republic Steel Corp. v. Maddox*,
379 U.S. 650 (1965) ................................................................................ 25

*Stephenson v. All Resort Coach, Inc.*,
No. 12-cv-00044 (SKG), 2013 U.S. Dist. LEXIS 121766 (D. Utah Aug.
26, 2013) ................................................................................ 18, 23

*Textile Workers Union v. Lincoln Mills of Alabama*,
353 U.S. 448 (1957) ................................................................................ 34

*The Whiting-Turner Contracting Co. v. Fitzpatrick*,
366 Md. 295 (2001) ................................................................................ 31

*Trinidad v. Pret A Manger (USA) Ltd.*,
No. PAE-12-6094, 2013 U.S. Dist. LEXIS 97544 (S.D.N.Y. July 11,
2013) ................................................................................ 18

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ................................................................................ 35

*Vaca v. Sipes*,
386 U.S. 171 (1967) ................................................................................ 28

*Williams v. Prof'l Transp., Inc.*,
294 F.3d 607 (4th Cir. 2002) ................................................................................ 26

*Wyatt v. Interstate & Ocean Transp. Co.*,
623 F.2d 888 (4th Cir. 1980) ................................................................................ 28

*Wynn v. Hewlett-Packard Co.*,
No. 11-cv-01287 (AW), 2012 U.S. Dist. LEXIS 3929 (D. Md. 2012) ............. 27

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) ................................................................................ 28, 29

**STATUTES**

29 U.S.C. § 185(a) ................................................................................ passim

iv

29 U.S.C. § 203(m) ..................................................................................passim

29 U.S.C. § 206........................................................................10, 16, 23

29 U.S.C. § 207(a)(1).......................................................................10

29 U.S.C. § 216(b) and (c).............................................................32

Md. Code Ann., Lab. & Empl. § 3-503 .........................................1, 2, 31

**OTHER AUTHORITIES**

29 C.F.R. § 531.52 .....................................................................12, 18

76 Fed. Reg. 18831-18860 (April 5, 2011).........................................12

DOL Opinion Letter WH-380 (March 26, 1976).................................21

Federal Rule of Appellate Procedure 28(a)(5)................................1, 24

Federal Rule of Appellate Procedure 28(a)(8)(A) ...........................1, 24

Federal Rule of Civil Procedure 60(b).............................................26

Local Rule 45 ..................................................................................2

Opinion Letter WH-536, 1989 WL 610248 (Oct. 26, 1989)................12

## I.    STATEMENT OF THE ISSUES

1.      Whether an employer must adhere to the strictures of Section 3(m) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m), where, as here, it does not take the "tip credit" to offset the minimum wage requirement of the FLSA (Count I).

2.      Whether Appellants ("Plaintiffs") have waived or abandoned their Breach of Contract (Count II) claim by: (a) failing to identify the issue on appeal in accordance with Federal Rule of Appellate Procedure 28(a)(5); and (b) failing to cite to any legal authority in their argument in accordance with Federal Rule of Appellate Procedure 28(a)(8)(A).

3.      If Count II is properly before the Court, whether Plaintiffs have sufficiently pled: (a) that they have exhausted the grievance and arbitration procedures set forth in the collective bargaining agreement ("CBA"); and (b) that their union breached its duty of fair representation in accordance with Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

4.      Whether Plaintiffs have waived or abandoned their Maryland Wage Payment and Collection Law ("MWPCL") claim, Md. Code Ann., Lab. & Empl. § 3-503, by not assigning error to the District Court's holding that Plaintiffs' counsel conceded at oral argument that "tips" are not "wages" under this statute, and, therefore, dismissed this claim primarily on that basis (Count III).

5.    If Count III is properly before this Court, whether "tips" are "wages" under the MWPCL and, if so, whether either the FLSA or LMRA preempts Plaintiffs' MWPCL claim.

## II.    STATEMENT OF THE CASE

Plaintiffs were employed by Ryman Hospitalities Properties, formerly Gaylord Entertainment Company ("Ryman"), and are currently employed by Marriott International, Inc. ("Marriott") (together, "Defendants") (JA 9).  Plaintiffs are servers at Defendants' hotels and restaurants located at the National Harbor in Prince George's County, Maryland[1]. *Id.*   Plaintiffs are also members of UNITE HERE, Local 25.  (JA 10).

Plaintiffs' principal claim arises from their allegations that Defendants violated Section 3(m) of the FLSA because, in their view, Defendants improperly redistributed a portion of their tips to their restaurant coworkers without their consent, even though Plaintiffs admit that Defendants paid them at or above the minimum wage at all relevant times. (JA 100, 132). Thus, the principal legal issue advanced by Plaintiff is whether an employer must adhere to the strictures of Section 3(m) if, as here, an employer does not take the "tip credit" to offset payment of the minimum wage requirements of the FLSA.

---

[1] By Order dated October 2,2014, this Court dismissed Plaintiff Patricio David Trejo for failure to prosecute pursuant to Local Rule 45.  (Doc. 29.)

Consistent with every other court that has considered this issue, the District Court correctly held Section 3(m) does not prohibit an employer from redistributing tips when it *does not* take the "tip credit" to offset the minimum wage requirement. (JA 130-136).

## III.      SUMMARY OF ARGUMENT

First, Plaintiffs assert in Count I that the FLSA prohibits Defendants from requiring Plaintiffs to share tips with other employees (like bartenders and bussers) who contribute to the service provided to customers, even when the Defendants did not take a tip credit against the FLSA's minimum wage obligations towards Plaintiffs. (JA 14). Plaintiffs' tip credit claims are based upon a fundamental misunderstanding of the FLSA, as well as the basic concept of a tip pool. The statutory language of the FLSA does not set forth any additional requirements regarding tips when an employer pays its employees at or above the minimum wage. Rather, what the FLSA *does* require is that employers pay employees a minimum wage for hours worked, plus overtime if they work over a certain number of hours per week. Plaintiffs concede that both of those requirements have been met by Defendants.

As a result, the District Court correctly held that, since an employer is not required to comply with Section 3(m) if the employer does not take the tip credit to offset the minimum wage, Plaintiffs' FLSA claim must be dismissed. Indeed,

3

based upon its recognition of these statutory limits of Section 3(m) of the FLSA, the Wage and Hour Division of the U.S. Department of Labor ("DOL") in mid-2011 sought to issue final regulations that, if effective, would have expanded the scope of the FLSA to require employers to comply with the requirements of Section 3(m) regardless of whether an employer takes a tip credit to offset the minimum wage. However, *every* Court that has considered whether the DOL has the authority to regulate tips in this manner has invalidated the DOL's 2011 regulation in accordance with *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because the regulation runs contrary to the plain language and structure of § 203(m), a conclusion that fully supports Defendants' position that Section 3(m) does not bar the sharing of tips at issue here. Notwithstanding, Plaintiffs here have repeatedly stated that they are only relying on the statutory language of section 3(m) and *not* these regulations (JA 99-100); as such, the DOL's 2011 regulations cannot provide support for their claims here.

Second, in Count II, Plaintiffs allege that Defendants breached Article XI of their CBA, a provision dealing with tips. (JA 15). Plaintiffs have waived or abandoned this issue because: (1) they have not identified this issue on appeal; (2) they have not cited to any legal authority to support their argument; and (3) they concede they are principally relying on the CBA language as evidence of

"willfulness," rather than as an independent basis for relief.

Moreover, Plaintiffs' arguments are without merit. In particular, Article XI states that the "entire amount of the gratuity shall be given to the server," and Plaintiffs allege they never agreed to voluntarily share a portion of their tips. (JA 12, 40). This claim fails because Plaintiffs do not plead that they have exhausted the grievance and arbitration procedures set forth in the CBA. Instead, in support of a "futility" argument, Plaintiffs allege that one of them asked the local union president whether Defendants' policy of sharing tips "was legal" and she responded "it was not." (JA 12). This one conversation, which took place approximately eight months before Plaintiffs filed a Complaint, does not come close to demonstrating futility, and their other evidence of futility does not relate to the issue of tips raised in this action.

There are also no allegations – or argument – that their union breached its duty of fair representation. Proof that a union breached its duty of fair representation requires a strong showing that the union's conduct was arbitrary, discriminatory, or in bad faith.

Third, Plaintiffs have waived the right to contest their MWPCL claim (Count III) because they failed to present or argue in their Opening Brief that the District Court was incorrect to rely upon Plaintiffs' counsel's concession at oral argument that a tip is not a wage under this state law. This failure constitutes a

waiver under applicable law.

To the extent Count III is properly before this Court, this Court should uphold the District Court's dismissal because: (1) a tip is not a wage under the MWPCL because tips or gratuities come from customers or guests, and not from employers, and is therefore not "promised for service" by the employer; (2) Plaintiffs' MWPCL claim is preempted by the FLSA under the U.S. Court of Appeals for the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), which held that state law claims for overtime pay that rely exclusively on the FLSA are preempted because Congress intended to create exclusive remedies for violations of its mandates; and (3) the MWPCL claim is preempted by the LMRA because the resolution of this claim requires the interpretation of the CBA, including Defendants' "past practice" and "custom" of redistributing tips with other employees who contribute to the service provided to customers.

## IV.     ALLEGATIONS FROM THE AMENDED COMPLAINT

Plaintiffs worked as servers at Defendants' hotels and restaurants located at the National Harbor in Prince George's County, Maryland. (JA 9). Plaintiffs were also members of UNITE HERE, Local 25. (JA 10). Plaintiffs allege that Defendants distributed a portion of their tips to bartenders, server assistants, bussers, or food runners, although they did not voluntarily agree to a tip pooling

6

arrangement with their coworkers.  (JA 11-12).

In support of their claims, Plaintiffs reference Article XI, Servers, Bus Employees, and Bartenders, paragraphs 11.1 and 11.2 of the CBA.  (JA 15).  Those paragraphs state:

> 11.1 Guest Checks:  Servers shall collect for all checks, unless specifically requested otherwise by the guests.  All gratuities shall be turned over to the Server responsible for same.  Thus, if a member of Employer management closes out a check on behalf of a guest in a dining room wherein the guest has designated a gratuity, the entire amount of the gratuity shall be given to the Server.

> 11.2 Gratuities Designated:   Where the guest has designated a gratuity, the entire amount of the gratuity shall be given to the server.  When a guest designates a gratuity for a server and member of hotel management, without a directive from the guest, shall not change such gratuity so as to lessen the amount theretofore designated for the server, the server shall receive the full amount of the gratuity originally designated.

(JA 40).

Plaintiff Jahir alleges that in February 2013 he spoke with Linda Martin, the local union president for Local 25, and asked her whether "Defendant's taking a percentage of their tips and giving it to/sharing it with Bartenders, Server Assistants, Bussers and Food Runners was legal." (JA 12).  In response, Plaintiff Jahir alleges that "[h]e was told by Ms. Linda Martin that it was not."[2] *Id.*

---

[2] Plaintiff Jahir also alleges that he was suspended without pay based "on a trumped up charge of harassing an employee and for conducting a meeting with his

## V.    DISTRICT COURT'S DECISION

Consistent with every other Court, the District Court held Section 3(m) governs only when an employer takes a tip credit to offset the minimum wage requirements.  (JA 131).  The Court explained: "Section 3(m) . . . provides a procedure under which an employer who has employees who receive their compensation partially in the form of tips may take a tip credit towards the minimum wage obligation." *Id.*  After noting that Plaintiffs do not dispute that Defendants paid them at or above the minimum wage at all times, the Court held that "the tip-pooling arrangement that [Defendants] have is not being utilized to take a tip credit and the provisions, therefore, of the Fair Labor Standards Act simply are not applicable." (JA 131-132).  Moreover, the Court also held that the DOL "exceeded their authority" under the "*Chevron* analysis" in implementing the new tip regulations, although noting that Plaintiffs chose not to rely upon these DOL regulations. *Id.*

The Court dismissed Plaintiffs' breach of CBA count because of Plaintiffs'

---

fellow employees" and the union provided him inadequate support. (JA 13-14). According to Plaintiff, Defendants investigated the allegations of harassment and concluded that he did not violate any of their policies. *Id*. Plaintiff Jahir returned to work on August 29, 2013 and Defendants offered to pay him "back pay for unpaid days he was suspended" in exchange for a release of all claims. *Id*. His union urged him to sign the release of claims, but he refused. *Id*. In their Appeal, Plaintiffs have disregarded this allegation and not used it to support their "futility" argument under Count II, although they relied upon it substantially at oral argument (JA 114-115).

"utter failure" to exhaust their remedies under the grievance procedures in the CBA. (JA 133). The Court also held that Plaintiffs' "futility" argument was "utterly without foundation" because the allegations themselves demonstrated that the union was "successful" in an unrelated matter concerning Plaintiff Jahir's suspension, which, in any event, "has nothing whatsoever" to do with their FLSA or breach of CBA claim. *Id*.

Finally, the Court dismissed Plaintiffs' MWPCL claim because: (1) "the thrust of the claim being made by the plaintiffs . . . is based upon a violation of the [FLSA]"; and (2) Plaintiffs' counsel conceded at oral argument that tips are not wages under this statute. (JA 134-135).

## VI.     ARGUMENT

### A.     Standard of Review

There are two standards of review applicable to this matter. First, this Court reviews *de novo* a grant of a Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss, applying the same legal standard as the district court. *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). Second, the Court reviews a district court's determination that a particular statement constitutes a judicial admission for abuse of discretion. *Meyer*

*v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004).

**B.    Statutory and Regulatory Background**

The FLSA requires that employers covered by the statute pay hourly employees at least the statutory minimum wage for all hours worked up to 40 in a workweek. 29 U.S.C. § 206. The FLSA further requires that employers covered by the statute pay overtime wages to employees who work more than 40 hours per week, unless they are specifically exempted from overtime pay requirements. 29 U.S.C. § 207(a)(1). There are no other remedial provisions in the statute. *See Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) ("The FLSA statute requires payment of minimum wages and overtime wages only, *see* 29 U.S.C. §§ 201-19 (2006); therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold.").

Section 3(m) of the FLSA provides:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

10

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m). In other words, if an employer pays an employee less than minimum wage and wants to credit an employee's received tips to make up the difference, Section 3(m) imposes the following conditions for an employer to take that "tip credit" against minimum wage: (1) the employer must pay tipped employees a cash wage of at least $2.13 per hour; (2) an additional amount of tips has been received by the employees and, when combined with the cash wage, is equal to the minimum wage; (3) the tipped employees have been informed by the employer of the provisions of Section 3(m); and (4) all tips received by such employees have been retained by the employee except for any pooling of tips among employees who customarily and regularly receive tips. 29 U.S.C. § 203(m). If an employer chooses to pay the full minimum hour wage to individuals who also receive tips, without relying on a tip credit to meet the minimum wage, then the statute *does not* impose additional restrictions or requirements. *See Mould v. NJG Food Serv., Inc*., No. JCB-13-1305, 2014 U.S. Dist. LEXIS 84441, at *17-18 (D. Md. June 17, 2004) (holding that, "[b]ecause this Court . . . finds that the

11

FLSA does not regulate tip-pooling arrangements outside of the minimum wage contexts," plaintiff "is not entitled to recover his tips in damages. Rather, the appropriate measure of damages is the difference between the wages paid and the applicable minimum wage").

On April 5, 2011, the Wage and Hour Division of the DOL published final amendments to regulations interpreting the FLSA. *See* 76 Fed. Reg. 18831-18860 (April 5, 2011). The 2011 Final Rule included a regulation amending 29 C.F.R. § 531.52 regarding Section 3(m), otherwise known as the "tip credit" provisions. The new regulation provides, in relevant part:

> The employer is prohibited from using an employee's tips, *whether or not it has taken a tip credit*, for any reason other than that which is statutorily permitted in Section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52 (emphasis added).[3] Thus, according to these DOL regulations, employers may not require their wait staff to participate in a "tip pool" that redistributes some of their tips to other restaurant workers – despite paying its wait staff at least the full minimum wage. As explained below, every Court that has considered whether the DOL has authority to regulate tips in this manner has

---

[3] Prior to 2011, the DOL's view was held in opinion letters. *See, e.g.*, Opinion Letter WH-536, 1989 WL 610248 (Oct. 26, 1989).

invalidated the DOL's 2011 regulation under *Chevron* [4] because Section 3(m) plainly does not impose a freestanding requirement pertaining to all tipped employees.

**C.    Defendants Did Not Violate Section 3(m) Because They Did Not Take The "Tip Credit" And They Paid Plaintiffs The Full Minimum Wage (Count I).**

Contrary to Plaintiffs' arguments, the District Court was correct in holding that Section 3(m) is strictly limited in its application to employers who use the "tip credit" to offset the minimum wage requirement.

**1.    Section 3(m) is clear and unambiguous and does not impose any requirements on an employer that does not take the "tip credit" to offset the minimum wage requirements.**

Although Plaintiffs have expressly disavowed any reliance on the new DOL regulation (JA 99-100), the analysis set forth in the decisions that have invalidated the regulation demonstrates that Section 3(m) only governs those employers who use the "tip credit" to offset the minimum wage requirement.

The decisions invalidating the regulation have done so based upon the *Chevron* analysis, which looks at whether the regulation is consistent with the unambiguous interpretation of the statute at issue.  As the U.S. Court of Appeals for the Fourth Circuit recently explained:

> We [first] ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is

---

[4] *Chevron, U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984).

> clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Only "if the statute is silent or ambiguous with respect to the specific issue" are we to proceed to *Chevron*'s second step, asking "whether the agency's answer is based on a permissible construction of the statute."

*Chamber of Commerce of U.S. v. Nat'l Labor Relations Bd.*, 721 F.3d 152, 160 (4th Cir. 2013) (internal citations omitted) *citing Chevron, USA, Inc.*, 467 U.S. at 842.

Notably, courts have *uniformly* refused to defer to the DOL's interpretation of section 3(m) because the courts have found that the DOL's interpretation is, and always has been, contrary to the unambiguous language of that section making clear that its requirements do not apply unless an employer utilizes a tip credit. For example, in *Platek v. Duquesne Club*, 961 F. Supp. 831, 832 (W.D.Pa. 1994), *aff'd without opinion*, 107 F.3d 863 (3d Cir. 1997), defendant Duquesne Club ("Club"), as here, did not claim a "tip credit" under Section 3(m). Rather, the Club paid the full minimum wage and then redistributed tips to specific wait staff employees, such as to waiters, waitresses, bus persons, the food and beverage director, the assistant food and beverage director, and banquet captains. *Platek*, 961 F. Supp. at 832. The court conducted a statutory analysis to ascertain the plain meaning of the FLSA and Section 3(m). In so doing, the court found:

> Examining the language of § 3(m), the Court finds that the section plainly does not apply *unless* the employer

14

> seeks to claim the tip credit. Only if the employer seeks
> to claim the tip credit and fails to meet the conditions set
> forth in § 3(m) may the employer violate the provisions
> of § 3(m).

*Id*. at 834 (emphasis added).

In 2010, the U.S. Court of Appeals for the Ninth Circuit in *Cumbie v. Woody Woo* also rejected the DOL's interpretation of Section 3(m). 596 F.3d 577 (9th Cir. 2010). In *Cumbie*, Oregon state law did not permit the taking of a tip credit, and the employer paid its wait staff full minimum wage. *Id*. at 579. The employer also required servers to contribute a portion of their tips to a pool for the benefit of other employees, including cooks and dishwashers. *Id*. at 578-79. Even though servers were paid full minimum wage, a server sued Woody Woo claiming that she could not be required to share her tips with kitchen employees. The DOL filed an *amicus* brief in support of the employee, claiming that employees may not be required to share tips with kitchen employees regardless of whether the employer takes the tip credit. Because Woody Woo "did not claim a 'tip credit,' Woody Woo contend[ed] that the tip-pooling arrangement was permissible so long as it paid her the minimum wage, which it did." *Id*. at 579. The Ninth Circuit rejected the DOL's interpretation and agreed with Woody Woo.

The Ninth Circuit conducted a thorough analysis by looking at the "statutory language sentence by sentence." *Id*. at 580. With respect to the first sentence of Section 3(m), the Ninth Circuit concluded, "an employee must pay a tipped

employee a cash wage of at least $2.13, but if the cash wage is less than the federal minimum wage, the employer can make up the difference with the employee's tips (also known as a 'tip credit')." *Id*.  The Ninth Circuit determined the next sentence simply "clarifies that the difference may not be greater than the actual tips received." *Id*.  The Ninth Circuit explained that the "third sentence states that the preceding two sentences do not apply (i.e. the employer may not take a tip credit) unless [the] two [statutory] conditions [set forth in Section 3(m)] are met." *Id*.

Just as Plaintiffs do here, the DOL argued employees "must be allowed to retain all of their tips" under Section 3(m), "except in the case of a 'valid' tip pool involving only customarily tipped employees – regardless of whether her employer claims a tip credit." *Id*.  The Ninth Circuit rejected this interpretation of Section 3(m) because it "cannot be reconciled with the plain text of the third sentence, which imposes conditions on taking a tip credit and does not state freestanding requirements pertaining to all tipped employees." *Id*. at 581.[5]  The Ninth Circuit continued:

> If Congress wanted to articulate a general principle that tips are the property of the employee absent a "valid" tip pool, it could have done so without reference to the tip

---

[5] Plaintiffs' focus on the phrase "in determining the wage" (Appellants' Brief, p. 13) is confusing and misplaced because, as noted by the Ninth Circuit, the third sentence explains that Section 3(m) only imposes conditions on employers that take a tip credit to offset the minimum wage pursuant to 29 U.S.C. § 206. *Woody Woo*, 596 F.3d at 580.

> credit. It is our duty to give effect, if possible, to every clause and word of a statute. Therefore, we decline to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous.

*Id*. (internal citations omitted). The Ninth Circuit noted that "[a] statute that provides that a person must do X *in order to achieve* Y does not mandate that a person must do *X*, period." *Woody Woo, Inc*., 596 F.3d at 581 (emphasis in original). Thus, the Ninth Circuit "reject[ed] the [DOL's] interpretation of the regulation as plainly erroneous and unworthy of any deference." *Id*.

Then, shortly after the DOL promulgated its 2011 regulation, several restaurant associations filed a lawsuit against the DOL asserting the 2011 regulations were invalid under *Chevron*. *Oregon Rest. & Lodging v. Solis*, No. MWM-12-01261, 2013 U.S. Dist. LEXIS 80396 (D. Or. June 7, 2013). The District Judge rejected the DOL's interpretation and found that "Congress has directly spoken on the precise question at issue" and concluded "that the new regulations are invalid at *Chevron* Step One." *Id*. at *2 and *24. The *Solis* court held, "[t]he text of Section 3(m) is clear and unambiguous: It imposes conditions on employers that take a tip credit but does not impose a freestanding requirement pertaining to all tipped employees." *Id*. at *18.[6]

---

[6] Regardless of whether the DOL's regulations are ordinarily entitled to *Chevron* deference, they are unenforceable as to Marriott. That is, the Court's Memorandum Opinion and Order in *Oregon Rest. & Lodging v. Solis* prohibits it

Other courts are in complete accord with these decisions based upon a plain reading of the text of section 3(m). *See Mould,* 2014 U.S. Dist. LEXIS 84441, at *15-16 ("the Court joins sister courts in finding that the [DOL's 2011] regulation is incompatible with the plain text of the statute and is therefore *ultra vires*"); *Stephenson v. All Resort Coach, Inc.*, No. 12-cv-00044 (SKG), 2013 U.S. Dist. LEXIS 121766, *24 (D. Utah Aug. 26, 2013) (DOL's regulation "runs contrary to the plain language and structure of § 203(m)."); *Trinidad v. Pret A Manger (USA) Ltd.*, No. PAE-12-6094, 2013 U.S. Dist. LEXIS 97544, *46 (S.D.N.Y. July 11, 2013) ("Because the Court is highly skeptical that DOL's regulations permissibly construe the statute, and because it is undisputed that Pret paid its employees the minimum wage without taking into account the tip credit, the Court, in its discretion, declines to conditionally certify a class based on plaintiffs' tip-pooling claims").[7]

---

from enforcing its regulation against any of the members of the plaintiff restaurant associations that can demonstrate they were a member of one of the associations as of June 24, 2013. (JA 62-63). Marriott was a member of the National Restaurant Association ("NRA"), both as of June 24, 2013 and through the present. (JA 65, 67, 69-70). Consequently, Plaintiffs may not rely on 29 C.F.R. § 531.52 to support their FLSA claims against Marriott because the regulation itself is now null and void as to those plaintiff members, including Marriott.

[7] Indeed, Plaintiffs' assertion that Section 3(m) itself prohibits Defendants from redistributing tips goes beyond the argument currently pressed by the DOL, as the DOL now recognizes that Section 3(m) does not expressly address the use of an employee's tips when a tip credit is not taken, and therefore now contends that this silence has created a gap that the DOL may fill with its new regulations. *See Pret*

Accordingly, the District Court's decision is consistent with the holdings of other federal courts across the country. Plaintiffs have provided no legal authority to support their position, which is contrary to all other published opinions on the subject. As a result, the District Court's decision should be affirmed.

> **2.    The Court need not even evaluate Defendants' tip pooling arrangement because the threshold question is whether Section 3(m) even applies to employers who do not offset the minimum wage requirement by taking a "tip credit."**

A significant portion of Plaintiffs' Opening Brief is dedicated to arguing (incorrectly) that Defendants' tip pooling arrangement itself is invalid because: (1) "there was no pooling of tips *among* employees within the meaning of § 203(m)"; and (2) Defendants did not have a formal policy or pooling arrangement as required by § 203(m). Appellants' Brief, pp. 17-26. These arguments are difficult to decipher within the context of this case.

First, Plaintiffs put the proverbial cart before the horse because the threshold and sole question is whether Section 3(m) even applies to employers who do not offset the minimum wage requirements by taking a "tip credit." Indeed:

> [S]ection [3(m)] plainly does not apply *unless* the employer seeks to claim the tip credit. Only if the

_____

*A Manger*, 2013 U.S. Dist. LEXIS at *45 ("Put differently, contrary to DOL's regulation, § 203(m)'s silence regarding employers' use of tips when no tip credit is taken is not a 'gap' in the statute left to be filled, so much as an area of workplace conduct unaddressed by a statute concerned with a different problem entirely: assuring the payment of minimum compensation to employees.")

> employee seeks to claim the tip credit and fails to meet
> the conditions set forth in § 3(m) may the employer
> violate the provisions of § 3(m).

*Platek*, 961 F. Supp. at 832; *Solis*, 2013 U.S. Dist. LEXIS at *18. (holding that

Section 3(m) only "imposes conditions on employers that take a tip credit but does

not impose a freestanding requirement pertaining to all tipped employees")

(emphasis added). Since the tip credit arrangement does not speak to the threshold

legal issue, this Court is not required to evaluate or consider these "fact" issues.[8]

Second, Plaintiffs' arguments are meritless. For example, their argument that

the tip pooling arrangement was invalid because some employees merely took

from, but did not contribute to, the tip pool[9] is misplaced. *The DOL has identified*

*all of the occupations that Plaintiffs allege shared in tips*—Bartenders, Server

Assistants/Bussers and Food Runners (JA 10-11)—as those that "customarily and

regularly receive tips" and may in fact participate in tip pools, based upon their

customer interaction contributing to overall customer service.[10]

---

[8] Similarly, Plaintiffs' "willful" argument (Appellants' Brief, pp. 27-29) is irrelevant because it does not address the threshold issue whether Section 3(m) governs when, as here, an employer does not take a tip credit to offset the minimum wage.

[9] At oral argument, Plaintiffs' counsel argued: "The premise and the issue we have here is there was no sharing. What happened in fact actually is they took money from our clients and just give to the other people. There was no reciprocal sharing." (*See* JA 102-103, 107-109) (Judge Titus explaining why Defendants' tip pool was reasonable and rationale).

[10] *See, e.g.,* DOL Field Ops. Handbook, June 30, 2000 at 30d04 (DOL recognizes

Moreover, Plaintiffs' argument that Defendants' tip pooling arrangement was invalid because their tips were taken without their permission, *i.e.*, "their employer just took the tips," is without merit because an employer may *require* its employees to participate in a *mandatory* tip pooling arrangement. *See Kilgore v. Outback Steakhouse of Florida, Inc*., 160 F.3d 294, 303 (6th Cir. 1998) (holding that Section 3(m) "expressly permits the 'pooling of tips' and does not bar employers from *requiring* tip pooling") (emphasis added); *see also Mould*, 2014 U.S. Dist. LEXIS 84441 at *13 ("Plaintiff would have the Court go further and find that 'with the exception of a valid tip pool or tip sharing arrangement, tips are the property of the employee and must be retained by the employee' . . . . The Court finds that Plaintiff's contention is unsupported by the text of the statute"); DOL Opinion Letter, 1987 DOLWH LEXIS 45 (May 26, 1987) (stating that "a tip pool does not need to be a voluntary arrangement consented to by the particular employees"); DOL Opinion Letter WH-380 (March 26, 1976) (same); DOL Field Ops. Handbook, June 30, 2000 at 30d04(b) (same).

### 3.  Policy arguments favor protecting the interests of other traditionally low wage restaurant workers.

First, Plaintiffs' policy argument(s) arbitrarily elevate the interests of servers

---

the following "occupations" as "employees who customarily and regularly receive tips":  waiters/waitresses, bellhops, counter personnel who serve customers, busboys/girls (server helpers), and service bartenders).

over the interests of other traditionally low wage restaurant workers, such as bus persons, cooks, dishwashers, server assistants, and food runners. As demonstrated by *Solis* (a case brought by several restaurant associations), countless number of restaurants that pay all of its employees at or above minimum wage redistribute a portion of tips to other restaurant workers who also work hard to make a positive dining experience for customers. Plaintiffs' arguments would serve to take money away from these other low wage restaurant workers simply because they do not have direct contact with customers, even though their contributions are no less important to a dining experience. Indeed, the individuals whom Plaintiffs allege shared in tips—Bartenders, Server Assistants/Bussers and Food Runners (JA 10-11)—all worked to contribute to the service to the customer that resulted in that customer's decision to tip. And, absent that contribution, there likely would never have been a tip in the first place.

Second, Plaintiffs contend that compelled redistribution of tips to others (even if those others are customarily and regularly tipped, like bartenders) is somehow underhanded because, they contend, it is a "back door" way of taking the "tip credit" to offset the minimum wage requirement. Appellants' Brief, pp. 32-34. The argument makes no sense. The tip credit is simply an offset of minimum wage. As long as Defendants paid the minimum wage, it does not matter how, or to whom, they redistributed tips.

Congress has directly spoken on this issue and concluded that an employer does not violate Section 3(m) if it does not take the "tip credit" to offset the minimum wage requirements.  As the Ninth Circuit explained:

> Even if Cumbie were correct, "we do not find [this] possibility . . . so absurd or glaringly unjust as to warrant a departure from the plain language of the statute." *The purpose of the FLSA is to protect workers from "substandard wages and oppressive working hours." Our conclusion that the FLSA does not prohibit Woo's tip-pooling arrangement does not thwart this purpose.* Cumbie received a wage that was far greater than the federally prescribed minimum, plus a substantial portion of her tips. Naturally, she would prefer to receive all of her tips, but the FLSA does not create such an entitlement where no tip credit is taken. Absent an ambiguity or an irreconcilable conflict with another statutory provision, we will not alter the text in order to satisfy the policy preferences' of Cumbie and amici.

*Woody Woo*, 596 F.3d at 582-83 (internal citations omitted) (emphasis added).[11]

For the foregoing reasons, this Court should affirm the District Court's dismissal of Appellants' FLSA claims, as the FLSA does not govern situations where, as here, an employer does not take a "tip credit" and pays its "tipped employees" the full minimum wage in accordance with Section 206.

---

[11] *See also Stephenson*, 2013 U.S. Dist. LEXIS at *25 ("Had Congress wanted to create such a requirement it could have easily mandated that all tips belong to the employee, without tying it to a tip credit.  Congress did not impose such a requirement.")

23

### D.    Section 301 of the LMRA Bars Plaintiffs' Breach of Contract Claim (Count II)

This Court should uphold the District Court's dismissal of Count II because Plaintiffs: (1) have not identified this issue on appeal in accordance with Federal Rule of Appellate Procedure 28(a)(5); (2) have not cited to any legal authority to support their argument in accordance with Federal Rule of Appellate Procedure 28(a)(8)(A); and (3) concede they are principally relying on the CBA language as evidence of "willfulness," rather than as an independent basis for relief.  *See* Appellants' Brief, pp. 29-32; *Edwards v. City of Godsboro*, 178 F.3d 231, 241, n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of [Federal Rule of Appellate Procedure 28(a)(8)(A)] [12] with respect to a particular claim triggers abandonment of that claim on appeal.").

To the extent Count II is properly before this Court, the Court should uphold the District Court's dismissal because Plaintiffs: (1) failed to exhaust the CBA grievance procedures; and (2) failed to allege that their union breached its duty of fair representation.

---

[12] Federal Rule of Appellate Procedure 28(a)(8)(A) requires that the argument section of an appellant's opening brief contain the "appellant's contentions and the reasons for them, *with citations to the authorities* and parts of the record on which the appellant relies . . . ." Fed. R. App. P. 28(a)(8)(A) (emphasis added).

**1.      Plaintiffs failed to exhaust the grievance procedures.**

Before attempting to bring a lawsuit under the LMRA,[13] a plaintiff must exhaust his or her remedies under an applicable collective bargaining agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965) (holding that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt to use the contract grievance procedure agreed upon by employer and union as the mode of redress"); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219 (1985) ("If Respondent had brought a contract claim under § 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective bargaining agreement before bring suit in court"); *Natl. Post Office Mail Handlers Local No. 305, LIUNA, v. U.S. Postal Serv.*, 594 F.2d 988, 991 (4th Cir. 1979) ("It is a well-established principle of labor law that a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention").

A court can excuse this requirement if a plaintiff sufficiently alleges that resorting to the grievance procedure would be futile. *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 n.2 (4th Cir. 1991).  As noted by this Court:

---

[13] Section 301 of the LMRA provides that: "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).

A cause of action will only lie against an employer if the union has breached its duty of fair representation of the employee. The reasoning behind this rule is simple. Federal labor law policy favors adjustment by the parties of disputes arising under a collective bargaining agreement. . . . The federal courts do not invade this domain on the complaint of an employee unless his union is "grossly deficient" in its representation or "recklessly disregards" the employee's rights.

An employee does not make his task any easier by not at least attempting to exhaust his contractual remedies. Certainly, where the employee has actual union performance during the grievance process as evidence, he can better show how it was "grossly deficient." A plaintiff like Amburgey must show that, because of the union's breach of its duty of fair representation, resort to contractual remedies would have been futile.

*Id*. at 29 (internal citations omitted).

Here, there are no allegations that any of the three Plaintiffs asked the union to file a grievance on their behalf in accordance with the CBA.[14]  Instead, Plaintiffs rely on *one* conversation that Plaintiff Jahir had with the union president in which

---

[14] On page 30 of their Opening Brief, Plaintiffs incorporated an apparent September 8, 2014 e-mail from Plaintiff Jahir to the Union President as evidence that they "asked their Union to grieve for them and they refused." Appellants' Brief, p. 30.  This Court should strike or disregarded this "new" evidence because: (1) the e-mail itself is not attached in the Joint Appendix; (2) the e-mail is incomprehensible and does not support a finding that the Union refused to grieve for Plaintiffs; (3) the underlying information is not alleged in the Amended Complaint; (4) the underlying information post-dates the District Court's April 21, 2014 decision by five months; and (5) Plaintiffs failed to present this information to the District Court pursuant to Federal Rule of Civil Procedure 60(b).  *See Williams v. Prof'l Transp., Inc*., 294 F.3d 607, 614 (4th Cir. 2002) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

26

he asked her whether the tip pooling arrangement was lawful and she said "it was not." (JA 12).  Notably, that one conversation, which occurred eight months before Plaintiffs filed their lawsuit, is the sum total of their allegations in support of their argument that they have sufficiently pled this claim.[15]  As the District Court correctly held, Plaintiffs' allegations fall woefully short of alleging futility.[16]  *See Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 184 (10th Cir. 1978) (holding that futility not shown when employee "never actually filed charges . . . and therefore never gave the system a chance to work").

**2.      Plaintiffs failed to plead the union breached its duty of fair representation.**

Moreover, there are no allegations – or argument – that the union breached its duty of fair representation.   A breach of a union's statutory duty of fair

---

[15] Plaintiff Gomes has not alleged a single allegation concerning their interactions with the union or why, in his view, the union would not have processed the grievance if asked it to do so.  Moreover, in their appellate brief, Plaintiffs have improperly embellished their allegations because the Amended Complaint says nothing about the union president telling "Plaintiffs that the issue was between Plaintiffs and their fellow employees."  *See* Appellants' Brief, p. 29;  *Wynn v. Hewlett-Packard Co.*, No. 11-cv-01287 (AW), 2012 U.S. Dist. LEXIS 3929, at *10 (D. Md. 2012) ("Hollow, equivocal averments raised in a responsive brief cannot, as a matter of law, salvage a facially implausible complaint").

[16] In an attempt to establish futility in the proceedings below, Plaintiffs principally relied on Plaintiff Jahir's displeasure with the union concerning an unrelated discipline. (JA 13-14, 114-115).  As explained above, the District Court held that Plaintiffs' "futility" argument was "utterly without foundation" because the allegations themselves demonstrated that the union was "successful" in an unrelated matter concerning Plaintiff Jahir's suspension, which, in any event, "has nothing whatsoever" to do with his FLSA or breach of CBA claim.  (JA 133).

representation occurs "only when a union's conduct toward a member of the collective bargaining agreement unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  A union must be "grossly deficient" in its representation or act in reckless disregard for a member's rights in order to sustain a claim for breach of the duty of fair representation."  *Wyatt v. Interstate & Ocean Transp. Co*., 623 F.2d 888, 891 (4th Cir. 1980).

The Seventh Circuit's recent decision in *Yeftich v. Navistar, Inc*. provides a good example of how difficult it is to plead that a union breached its duty of fair representation. *Yeftich v. Navistar, Inc*., 722 F.3d 911 (7th Cir. 2013).  In *Yeftich*, plaintiffs alleged that they were laid off from their jobs and that the employer subcontracted their work to nonunion plants in contravention of the CBA.  *Yeftich*, 722 F.3d at 914.  They further alleged that they filed "hundreds of grievances" with the union and they were assured by an unnamed union official that the union was processing the grievances.  *Id*.  In reality, however, the grievances were actually "diverted or stalled" and Navistar ended up closing the plant.  *Id*.

The employees filed suit against Navistar under Section 301 of the LMRA, alleging breach of the CBA.  *Id*.  The District Court dismissed plaintiffs' LMRA claim because the only factual allegation – "that an unnamed union official told them that their claims were being processed when that was not true" – was insufficient to state a claim for a breach of duty of fair representation.  *Id*. at 915.

28

The Seventh Circuit affirmed the District Court's holding because "[a]gainst the *Twombly/Iqbal* plausibility standard, these allegations are insufficient to state a claim for breach of the duty of fair representation." *Id.* In so holding, the court conducted a two-part analysis. First, the court considered whether plaintiffs had sufficiently alleged the union's actions were in "bad faith," which called for a "subjective inquiry. *Id*. Second, the court considered whether plaintiffs had sufficiently "offered plausible allegations of arbitrariness," which called for an "objective inquiry." *Id*.

> With respect to bad faith, the Seventh Circuit explained:
>
> The plaintiffs offer nothing to support their claim of bad faith apart from conclusory labels – that the unnamed union officials acted "invidiously" when they failed to process the grievances, or simply that the union's actions were "intentional, willful, wanton, and malicious."

*Id.* With respect to arbitrariness, the Seventh Circuit noted that this prong "is very deferential" to a union and that a "union enjoys substantial discretion in fulfilling it duty of fair representation." *Id*. at 917.

Given that the *Yeftich* plaintiffs were unable to sufficiently plead bad faith or arbitrariness, despite the fact that they had sought to file hundreds of grievances, Plaintiffs here certainly have not come close to pleading that their union breached its duty of fair representation.

### E.     The District Court Correctly Dismissed Plaintiffs' MWPCL Claim (Count III)

This Court should uphold the District Court's dismissal of Count III for many reasons.  First, Plaintiffs concede Count III by not assigning error to the District Court's holding that Plaintiffs' counsel admitted at oral argument that "tips" are not "wages" under the MWPCL, and, therefore, dismissed the claim primarily on that basis.  Indeed, in response to the District Court's question whether "tips" are "wages" under the MWPCL, Plaintiffs' counsel responded: "...it looks to me and I will agree that it's not wages."  (JA 117).  The District Court then held:   "plaintiffs' lawyer agrees that a claim for tips is not subject to Maryland's Wage and Hour Law.  If that's the case, then there's no viable claim under the Maryland Wage and Hour Law in the first place."  (JA 134).  Thus, Plaintiffs have waived this issue on appeal because they have not argued in their Opening Brief that the District Court erred in this regard.  *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues.").[17]

Second, tips are not wages under the MWPCL because they are not "promised [by an employer] for service."  Under the MWPCL, "wage means all

---

[17] Had Plaintiffs appealed this issue, the standard of review would have been whether the District Court abused its discretion.  *Meyer*, 372 F.3d at 264.

compensation that is due to an employee for employment." §3–501(c)(1).  More specifically, "wage" includes a bonus, a commission, a fringe benefit, overtime wages, or any other remuneration *promised for service*. §3–501(c)(2) (emphasis added).  Here, Defendants promised only to pay Plaintiffs at or above the minimum wage.  Indeed, even the CBA itself explains that gratuities are designated by guests.  (JA 40).  *See The Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 304-05 (2001) (for employee to prevail, a wage must be "promised for service"); *see also Butler v. PP&G, Inc.*, No. WMN-13-430, 2013 U.S. Dist. LEXIS 159417, at *21-22 (D. Md. Nov. 7, 2014) ("deductions from . . . wages impermissible under § 3-503," not "tip deductions"); *Mould*, 2014 U.S. Dist. LEXIS at *9-17 (tips are not wages recoverable under the MWPCL where employer paid at least full minimum wage).

Third, as the District Court recognized, and Plaintiffs reiterate here, "the thrust of the claim being made by the plaintiffs' in this case is based upon a violation of the [FLSA]."   (JA 135); Appellants' Brief, p. 31 ("Plaintiffs-Appellants' main action and thrust of their claims, is brought under the FLSA"). As a result, the FLSA preempts Plaintiffs' MWPCL claim because the "entitlement" to the tips underlying their claim would be derived from the FLSA.[18]

---

[18] The Court dismissed Count III because, in part:  "the thrust of the claim being made by the plaintiffs . . . is based upon a violation of the [FLSA]." (JA 134-135).

Federal law preempts state law in the following three ways:

> First, federal law may preempt state law by expressly declaring Congress' intent to do so. Second, Congress can "occupy the field" by "regulating so pervasively that there is no room left for the states to supplement federal law." And third, a state law is preempted "to the extent it actually conflicts with federal law."

*Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315 (4th Cir. 2012) (internal citations omitted.)

In *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), the Fourth Circuit held that the FLSA preempts claims for overtime pay based on negligence, breach of contract, and/or fraud theories pursuant to obstacle or conflict preemption. *Sara Lee Corp.*, 508 F.3d at 191-95 (stating that "the issue before us is whether, in these circumstances, the Class Members' FLSA-based state claims 'stand[] as an obstacle of the full purposes and objectives of' the FLSA"). The Fourth Circuit explained that "Congress's intention to create exclusive remedies was clear," as evidenced by the FLSA's mandate that the commencement of an action by the Secretary of Labor terminates an employee's own right of action – a special feature of the FLSA's enforcement scheme, found in 29 U.S.C. § 216(b) and (c). *Sara Lee Corp.*, 508 F.3d at 194. After additional analysis of the FLSA's "unusually elaborate enforcement scheme," the Court held, "the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption" because "the FLSA's enforcement scheme is an exclusive

32

one." *Id.*

Here, just like the common law claims in *Sara Lee Corp.*, Plaintiffs' MWPCL is preempted because they improperly rely on the FLSA to demonstrate their entitlement to the tips. *See Chavez v. Besie's Corp.*, No. 14-cv-1338, 2014 U.S. Dist. LEXIS 146516, at *11 (D. Md. Oct. 10, 2014) (Relying on *Sara Lee*, the Court held "Plaintiffs' MWPCL overtime claims are based solely on the wage rate set out in the FLSA and thus amounts to an attempt to enforce the FLSA through the MWPCL. The FLSA preempts Plaintiffs' MWPCL overtime claims"); *Mould v. NJG Food Serv. Inc.*, No. JKB-13-1305, 2014 WL 1430696, at *3 n.3 (D. Md. Apr. 11, 2014) (stating that, if plaintiff's MWPCL claims "relied exclusively upon the FLSA, those claims might have been preempted"), *denying motion for partial reconsideration and/or clarification* at 2014 U.S. Dist. LEXIS 84441 at *8-9 ("Where, as here, the basis of an action is the violation of an FLSA mandate, the remedies provided by the FLSA are the exclusive remedies available").

Fourth, to the extent Plaintiffs rely on Article XI of the CBA (JA 40) as an "entitlement" to the tips, the LMRA preempts Plaintiffs' MWPCL claim.[19]  As noted above, Section 301 of the LMRA grants federal courts jurisdiction over disputes "for violation of contracts between an employer and a labor organization

---

[19] Indeed, as argued by Marriott's counsel at oral argument, Count III is preempted by the Fourth Circuit's decision in *Anderson v. Sara Lee* and/or the LMRA.  (JA 89-90)

representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185(a). The U.S. Supreme Court has interpreted this language as authorizing federal courts "to fashion a body of federal law for the enforcement of . . . collective bargaining agreements." *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957). It is well-settled that this authority forms the basis for federal preemption of state law claims which "depen[d] on the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988); *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 256 (4th Cir. 1987); *Davis v. Bell Atl.-W.Va., Inc.*, 110 F.3d 245, 248 (4th Cir. 1997).

A "state law claim is preempted when resolution of the claim 'requires the interpretation of a collective-bargaining agreement,'" *Lingle*, 486 U.S. at 405-06 (internal citations omitted), or is "inextricably intertwined with consideration of the terms of the labor contract." *Foy v. Giant Food Inc.*, 298 F.3d 284, 287 (4th Cir. 2002) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, (1985)). According to the Supreme Court, "when a state-law claim is substantially dependent on an analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the claim as a state law claim." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987).

Plaintiffs' claim is preempted by Section 301 because, to demonstrate that they are owed these tips, an arbitrator or fact-finder will be required to interpret the

CBA language in light of Defendants' long history and "past practices" of redistributing tips from servers to other low wage restaurant employees. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960) ("the industrial common law – the practices of the industry and of the shop – is equally a part of the collective bargaining agreement, although not expressed in it"); *Bozetarnik v. Mahland*, 195 F.3d 77, 82 (2d Cir. 1999) (explaining that "past practices" become part of a collective bargaining agreement when they have "ripened into an established and recognized custom between the parties").

## VII.   CONCLUSION

For the foregoing reasons, Appellees Marriott International, Inc. and Ryman Hospitalities, Inc. respectfully request that the Court affirm the District Court's order dismissing Plaintiffs' Amended Complaint.

Respectfully submitted this 15th day of December, 2014

/s/ Joshua Waxman
Joshua Waxman
Steven E. Kaplan
LITTLER MENDELSON, P.C.,
1150 17th Street N.W., Suite 900
Washington, DC 20036
202.842.3400
jwaxman@littler.com
skaplan@littler.com

David B. Jordan
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
713.951.9400
djordan@littler.com
Counsel for Appellee
MARRIOTT INTERNATIONAL,
INC.

/s/ Daniel V. Johns
Daniel V. Johns
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215.864.8652.

Michelle M. McGeogh
BALLARD SPAHR LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202
410.528.5662
Counsel for Appellee
RYMAN HOSPITALITY
ROPERTIES, INC.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 32(a)(5)(A) and 32(a)(7)(B)(i) I hereby certify that the foregoing Appellee's Brief was prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman, and is 8,865 words in length.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Appellee's Brief was served on this 15th day of December, 2014 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen Christopher Swift
Charity C. Emeronye Swift
SWIFT & SWIFT, ATTORNEYS AT LAW, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia  22314-3488


/s/ Joshua Waxman
Joshua Waxman